## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANDREW DURHAM**, on behalf of himself and all others similarly situated, | ) Case No.<br>)<br>)<br>) |
| Plaintiff, | ) **COLLECTIVE ACTION**<br>) **COMPLAINT** |
| vs. | )<br>) **JURY DEMAND ENDORSED** |
| **THE DALLAS GROUP OF AMERICA, INC.**, | ) **HEREON**<br>)<br>) |
| Defendant. | ) |

Plaintiff Andrew Durham ("Plaintiff"), on behalf of himself and all others similarly situated, for his Complaint against Defendant The Dallas Group of America, Inc. ("Defendant"), states and alleges as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of himself and other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and Division and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Division.

5. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

6. Plaintiff is an adult individual residing in Georgetown, Indiana.

7. Within the three years preceding the filing of this Action, Plaintiff was employed by Defendant as a non-exempt employee who was paid on an hourly basis.

8. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

9. Defendant The Dallas Group of America, Inc. is a for-profit New Jersey corporation with its principal place of business in Whitehouse, New Jersey, in Hunterdon County. Defendant can be served via its statutory agent: Corporation

Service Company, Princeton South Corporate Ctr, Suite 160, 100 Charles Ewing Blvd, Ewing, NJ 08628.

10. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

11. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

12. At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

13. Plaintiff's written Consent to Join this Action is attached hereto as Exhibit A.

## FACTUAL ALLEGATIONS

14. Defendant manufactures, packages, and distributes, edible oil filtration and adsorbent treatment solutions throughout the United States.

15. As a manufacturer of edible products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and is subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 9, *et seq.* (hereinafter "FDCA").

16. In enforcing the FDCA, the FDA promulgates its own Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of

human food, set forth in 21 C.F.R. § 110, with which Defendant is required by law to comply.

17. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials ***shall conform to hygienic practices while on duty*** to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b) (emphasis added). These practices include, but are not limited to:

(1) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

(2) Maintaining adequate personal cleanliness.

(3) Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate hand-washing facility before starting work, after each absence from the workstation, and at any other time when the hands may have become soiled or contaminated.

(4) Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

(5) Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

(6) Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

4

    (7)    Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed.

    (8)    Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

    (9)    Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

18.    Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." 21 C.F.R. §110.10(d).

19.    The FDCA prohibits the adulteration of food, and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 U.S.C. § 331.

20.    Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4).

21.    Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

22.    In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. 21 C.F.R. § 110.5(a).

23. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

24. Thus, it would be impossible for Plaintiff and the putative class members, who were engaged in the manufacturing, packaging, and handling of food products, to perform their work duties unless they wore sanitary clothing and other protective equipment.

25. Indeed, if Plaintiff and the putative class members did not follow federal law and wear sanitary clothing and other personal protective equipment, it is possible, if not likely, that this would cause the spread of food-borne pathogens to those who consumed Defendant's products.

26. Upon information and belief, Defendant would not want to endanger the public by encouraging or permitting its employees to disregard federal and/or state food-safety laws.

27. Upon information and belief, Defendant would deem it impossible for its employees to perform their job duties unless they were in compliance with federal or state food safety laws, including the laws requiring Defendant's employees to wear sanitary and other protective equipment.

28. As a result, compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is integral and indispensable to the work they are hired to do.

29. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

30. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is a component of the work they are hired to do.

31. Unless Defendant's employees involved in the manufacturing, packaging, and handling of food comply with the GMPs, they cannot complete their work.

32. Therefore, the donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food.

33. Because the donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food,

the time spent donning and doffing is compensable work time within the meaning of the FLSA.

34. The donning of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' first principal activity of the day.

35. The doffing of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' last principal activity of the day.

36. Plaintiff was employed by Defendant in the last three years in its food manufacturing facility in Jefferson, Indiana. Plaintiff's job duties involved the manufacturing, packaging, and handling of edible products. Other similarly situated employees are and were employed by Defendant in the manufacturing, packaging, and handling of edible products at Defendant's manufacturing facilities throughout the United States.

37. Because Plaintiff and other similarly situated employees are involved in the manufacturing, packaging, or handling of edible products, to comply with the GMPs they must wear sanitary clothing and other protective equipment, including, but not limited to, uniforms, hair nets and beard nets.

38. Plaintiff and other similarly situated employees who are involved in the manufacturing, packaging, or handling of edible products cannot complete their work unless they are wearing sanitary clothing and other protective equipment.

39. Compliance with the GMPs by Plaintiff and other similarly situated employees is integral and indispensable to the work they are hired to do.

40. Compliance with the GMPs by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

41. Compliance with the GMPs by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

42. The donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Plaintiff and other similarly situated employees.

43. The donning and doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

44. The donning and doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

45. The donning of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is those employees' first principal activity of the day.

46. The doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is those employees' last principal activity of the day.

47. Plaintiff and other similarly situated employees were non-exempt employees under the FLSA and were paid an hourly wage.

48. Within the last three years, Defendant required Plaintiff and other similarly situated employees to don sanitary clothing and other protective equipment while at Defendant's facility but were not paid for this time.

49. Within the last three years, Defendant required Plaintiff and other similarly situated employees to wash their hands before entering the food manufacturing facility. Plaintiff and other similarly situated employees were not paid for this time.

50. At the end of their scheduled shift, Plaintiff and other similarly situated employees were required to doff their sanitary clothing and other protective equipment at Defendant's facility but were not paid for this time.

51. Plaintiff and other similarly situated employees, as full-time employees, regularly worked 40 or more hours in a workweek in the three years preceding the filing of this Action, including donning and doffing time and associated travel.

52. Plaintiff and other similarly situated employees were not paid for all of the time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel.

53. As a result of Plaintiff and other similarly situated employees not being paid for all hours worked, Plaintiff and other similarly situated employees were not paid overtime compensation for all of the hours they worked in excess of forty (40) each workweek.

54. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

55. The amount of time Plaintiff and other similarly situated employees spent performing unpaid work was approximately ten to fifteen minutes or more each day. This resulted in approximately 50 minutes to 1 hour and 25 minutes or more of unpaid overtime per class member, per week.

### COLLECTIVE ACTION ALLEGATIONS

56. Plaintiff brings this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

57. The class that Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> **All current and former employees of The Dallas Group of America, Inc. who were involved in the manufacturing, packaging, or handling of edible products and who were required to don and doff sanitary clothing and other protective equipment, but were not paid for that time at any time during the three (3) years preceding the date of the filing of this Action to the present.**

58. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is the representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

59. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

### FLSA OVERTIME VIOLATIONS

60. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

61. Plaintiff and other similarly situated employees were not paid for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel.

62. Plaintiff and other similarly situated employees regularly worked 40 or more hours per workweek for Defendant.

63. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel, resulted in Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

64. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

65. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all persons similarly situated, prays that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b);

C. Award Plaintiff and the putative class actual damages for unpaid wages;

D. Award Plaintiff and the putative class liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the putative class;

E. Award Plaintiff and the putative class pre-judgment and post-judgment interest at the statutory rate;

F. Award Plaintiff and the putative class attorneys' fees, costs, and disbursements; and

G. Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all eligible claims and issues.

        Respectfully submitted,

        */s/ Ravi Sattiraju*
        Ravi Sattiraju (NJ Bar No. 035251998)
        **SATTIRAJU & THARNEY, LLP**
        50 Millstone Rd.
        Building 300 Suite 202
        East Windsor, NJ 08520
        Telephone: (609) 469-2110
        Facsimile: (609) 228-5649
        Email: rsattiraju@s-tlawfirm.com

        Shannon M. Draher (OH Bar 0074304)\*
        **NILGES DRAHER LLC**
        7034 Braucher Street NW, Suite B
        North Canton, OH 44720
        Telephone: (330) 470-4428
        Facsimile: (330) 754-1430
        Email: sdraher@ohlaborlaw.com

        Robi J. Baishnab (OH Bar 0086195)\*
        **NILGES DRAHER LLC**
        1360 E 9th St, Suite 808
        Cleveland, OH 44114
        Telephone: (216) 230-2955
        Facsimile: (330) 754-1430
        Email: rbaishnab@ohlaborlaw.com

        *Counsel for Representative Plaintiff*

        \**Pro hac vice anticipated*

Dated:  December 27, 2022

# Exhibit A
## Consent to Join form – Andrew Durham

# CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1. I, Andrew P. Durham, hereby consent and agree and opt-in to become a plaintiff class member in a lawsuit or arbitration brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, *et seq.* against my current/former employer, Dallas Group of America, and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives.

2. I hereby agree to be bound by any adjudication of this action by the Court or arbitrator, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by the Court or an arbitrator as fair, adequate, and reasonable.

DATE: 12/08/2022         SIGNATURE: _____

Andrew Durham
PRINTED NAME